

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

### NO. PD-0592-10

---

### ROBERT JACKSON CRIDER, Appellant

### v.

### THE STATE OF TEXAS

---

**On Discretionary Review of**
**Case No. 05-09-00926-CR**
**of the Fifth Court of Appeals,**
**Collin County**

---

WOMACK, J., filed a dissenting opinion, in which KELLER, P. J., joined.

The Fourth Amendment to the United States Constitution requires that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Under Article 18.01 of the Code of Criminal Procedure, a search warrant may be obtained from a magistrate only after submission of an affidavit setting forth substantial facts establishing probable cause.[1] Probable cause exists if,

---

[1] TEX. CODE CRIM. PROC. art. 18.01(b).

under the totality of the circumstances set forth in the affidavit presented to the magistrate, there is a "fair probability"[2] that contraband or evidence of a crime will be found in a particular place at the time the warrant is issued.[3] The magistrate may interpret the affidavit in a non-technical, common-sense manner and may draw reasonable inferences from the facts and circumstances contained within its four corners.[4]

Reviewing courts give great deference to a magistrate's determination of probable cause.[5] "[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed."[6]

I agree with the ultimate conclusion of the Court of Appeals that the magistrate had a substantial basis for concluding that probable cause existed. However, I do not find an "uninterrupted sequence of events" or "factual time-line" described in the affidavit. In fact, there is no language in the affidavit indicating any amount of time that may have elapsed between the events.

The State would have the magistrate infer an "uninterrupted course of events" when there is "nothing indicating any kind of break or delay before the officer sought a search warrant." But

---

[2] *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Cr. App. 2010); *Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex. Cr. App. 2007).

[3] *Schmidt v. State*, 659 S.W.2d 420, 421 (Tex. Cr. App. 1983) ("The facts submitted to the magistrate ... must be sufficient to justify the conclusion that the property that is the object of the search is probably on the premises to be searched *at the time the warrant issues*.") (emphasis in original); *Cassias v. State*, 719 S.W.2d 585, 588 (Tex. Cr. App. 1986).

[4] *Flores*, 319 S.W.3d, at 702; *Cassias*, 719 S.W.2d, at 588-89.

[5] *Gates*, 462 U.S., at 236; *Rodriguez*, 232 S.W.3d, at 59-60.

[6] *Gates*, 462 U.S., at 238-39 (internal quotations omitted).

this inference would run counter to our opinion in *Schmidt v. State*,[7] in which a magistrate could not draw such an inference from an affidavit that failed to indicate the timing of a sequence of events. In other words, the affiant must submit facts establishing that the evidence is on the premises at the time the warrant is issued; timeliness is not presumed in the absence of facts suggesting staleness.

I also do not agree with the State that a magistrate may infer that a police officer would not wait to submit an affidavit while evidence was likely disappearing from the place to be searched. The State seems to advocate a presumption that police officers act reasonably in requesting search warrants. While many officers may act reasonably, the basic purpose of the Fourth Amendment is to "safeguard the privacy and security of individuals against arbitrary invasions by governmental officials."[8] Indeed, searches by officers are deemed unreasonable unless authorized by a search warrant or certain exceptions to the warrant requirement.[9] To presume that the affiant was acting reasonably rather than arbitrarily in requesting a warrant would run counter to the requirements of the Amendment.

On the other hand, the appellant's argument, that in order to issue the warrant in this case, the magistrate must have been able to conclude that the blood drawn would contain 0.08 grams of alcohol per 100 milliliters, is not correct. To the contrary, the magistrate needed only to conclude that there was a fair probability that evidence of intoxication would be found. A person commits the offense of Driving While Intoxicated "if the person is intoxicated while operating a

---

[7] 659 S.W.2d 420, 421 (Tex. Cr. App. 1983). The facts and holding of *Schmidt* are discussed in some detail in *State v. Jordan*, 342 S.W.3d 565, 570-71 (Tex. Cr. App. 2011).

[8] *Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523, 528 (1967).

[9] *Id.*, at 528-29.

motor vehicle in a public place."[10] "Intoxicated" is defined in Penal Code Section 49.01(2) to mean "(A) not having the normal use of mental or physical facilities by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more substances, or any other substance into the body; or (B) having an alcohol concentration of 0.08 or more." The warrant would be justified if a magistrate could reasonably conclude that there was a fair probability of finding evidence of intoxication as defined in Section 49.01(2)(A), which includes alcohol concentrations below 0.08 as well as other drugs and combinations. In fact, the affidavit itself stated that the blood would be analyzed for "alcohol or *drug* concentration," and the warrant similarly ordered analysis of "alcohol and/or *drug* concentration."

I would hold that the affidavit provided the magistrate with a substantial basis for concluding that there was a fair probability that evidence of intoxication would be found in the appellant's blood.[11] The affiant's observations indicated that the appellant was highly intoxicated at the time of the stop and had consumed at least alcohol. Evidence that other drugs had been ingested, particularly in combination with the alcohol, would constitute further evidence of intoxication. It is common knowledge that traces of many drugs can be detected in the blood for substantially longer than 24 hours following ingestion,[12] so even if the stop had been made in the early morning hours of June 6, nearly 25 hours before the magistrate signed the warrant at 1:07

---

[10] TEX. PEN. CODE § 49.04(a).

[11] At the risk of being repetitive, I wish to emphasize that this case does not require a decision whether there was probable cause under these circumstances, but rather the greatly deferential question of whether the magistrate had a *substantial basis* for so determining.

[12] *See, e.g., American Interstate Ins. Co. v. Hinson*, 172 S.W.3d 108, 113 (Tex. App.–Beaumont 2005); *Sotelo v. Gonzales*, 170 S.W.3d 783, 789 (Tex. App–El Paso 2005); United States National Library of Medicine, National Institutes of Health, *MedLinePlus*: *Toxicology Screen* (available at http://www.nlm.nih.gov/medlineplus / ency/article/003578.htm).

a.m. on June 7, the observed symptoms of intoxication provided the magistrate with a substantial basis for concluding that probable cause existed at the time the warrant issued.[13]

I would affirm the judgment of the Court of Appeals.

Filed: November 16, 2011.
Publish.

---

[13] The better practice is for affiants to specify the times of critical events so that magistrates have precise information from which to determine probable cause. On different facts, a lack of specific information about times might cause an affidavit to be insufficient.